HARRISON, Administrator, Respondent, v.
FRANKLIN, Appellant.

St. Louis Court of Appeals, June 11, 1907.

1. **PRACTICE: Instruction: Action on Contract.** In an action on a contract wherein the defendant agreed to pay plaintiff certain sums for clearing a railroad right of way and getting out ties, an instruction for the plaintiff is set out in full and held to be erroneous because indefinite, and involved so as not to furnish the jury proper guide, and because it uses the word "defendant" for plaintiff in a way that might be misunderstood, and because it submits a question of law as well as of fact.

2. **———: Action on Contract: Quantum Meruit.** In such action where the petition alleged performance of the contract and the answer denied performance and pleaded a counterclaim for overpayment for the work actually done, and the reply alleged as an excuse for non-performance that the work was stopped by the defendant, the correct theory upon which the case should have been tried was *quantum meruit* for work and labor done, the contract furnishing the measure for the valuation of the work.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*John A. Hope* for appellant.

The court erred in instructing the jury as set out in plaintiff's instruction numbered 1.    The above instruction is erroneous, whether this suit be viewed as an action upon contract or an action upon *quantum meruit*.    If grounded upon contract, as we claim it is,

the instruction authorized a recovery without requiring plaintiff to show performance on his part; on the other hand, if the action is upon *quantum meruit* the instruction was erroneous because it did not advise the jury that plaintiff could recover only the reasonable value of the work actually done. Eyerman v. Cemetery Assn., 61 Mo. 491; M'Cullough v. Baker, 47 Mo. 402. Even if defendant had stopped the work, the recovery could only be for the work actually done, and then only in an action for damages for breach of the contract or upon *quantum meruit*, and not in a suit, as in this case, for the price specified in the contract. Ahearn v. Boice, 19 Mo. App. 555; Kelley v. Rowan, 33 Mo. App. 443.

*Oliver & Oliver* for respondent.

The testimony in this case shows, beyond question, that the appellant was indebted to the respondent, and that the verdict was for the right party. Where this is so the universal rule is the verdict and judgment of the trial court will not be disturbed. R. S. 1899, sec. 865; Wagner v. Edison Elec. Co., 82 Mo. App. 287; Walker Bros. v. Railroad, 68 Mo. App. 465; Jones v. Brownlee, 161 Mo. 258; Homuth v. Railroad, 129 Mo. 629. And this is true although the trial court may have given erroneous instructions. Sullivan v. Railroad, 133 Mo. 1; Kelly v. Railroad, 88 Mo. 534; Prichard v. Hewitt, 91 Mo. 175.

STATEMENT.—After the appeal was granted in this case, plaintiff died intestate and the suit has been revived here in the name of O. H. Harrison, administrator of R. E. Harrison. In the year 1898, from Kennett, in Dunklin county, what was known as the St. Louis, Kennett & Southern Railroad run to Caruthersville, in Pemiscot county, Missouri. Pascola, a station on this road, is in Pemiscot county, Missouri. South of Pascola defendant owned a large body of timber land and desired to build a log railroad from Pascola to this land.

A right of way was obtained for eight and one-half miles of the proposed road. Six miles south of Pascola the line crossed Elk Chute. The Kennett Railroad agreed to and did pay for the clearing and making of ties of two miles of the road from Pascola. The balance of the work and the furnishing of ties was to be done by defendant, and he employed R. E. Harrison, the plaintiff, to do the work and make the ties. Harrison signed the following agreement:

"ST. LOUIS, KENNETT & SOUTHERN RAILROAD.
   "Louis B. Houck, Gen. Supt.
                              "Kennett, Mo.

"Memoranda of an agreement of Ed. Harrison, relative to cutting a right of way south from near Pascola, Mo., and putting ties on same.

"First. Right of way fifty foot in width is to be cleared of all timber, a strip twelve foot wide in center is to have the timber cut at the surface of the ground, all timber to be taken off the right of way, and the price on cutting and clearing is to be fifteen dollars per acre.

"Second. Standard ties are to be made for the said road and all ties so cut within one hundred feet of each side of the center of the right of way and put at edge of clearing fifty ties to the hundred foot and shall be paid for at the following rates, to-wit:

"Cypress, ten cents per tie. Oak, locust, mulberry and sassafras at twelve cents per tie.

"Third. Eight and a half miles for the proposed road now being laid out by the engineer shall be cleared as above specified by August 1, 1898, and the ties cut and put at edge of right of way as above specified by the first of September, and this time is made the essence of this agreement.

"Fourth. At the end of each month he is to furnish a pay roll, with statement of the amount of work done during the month approved by the engineer in charge,

but the amount called for by the pay roll shall in no case exceed the sum due in this agreement; payment shall be made by the fifteenth of the succeeding month.

"Fifth. The St. L., K. & S. Ry. Co. shall be held responsible for the clearing of the first two miles from Pascola south and the ties put thereon, and J. E. Franklin for the balance of the road.

"Sixth. Said Harrison is to receive for all merchantable cotton wood and ash logs and hickory cut on the right of way and rolled to the edge thereof, one dollar per thousand log measure to be paid when the road is completed and the logs taken up by the sawmill company.

"June 3, 1898.                    R. E. HARRISON."

Harrison did not complete the work by September 1, and in order to furnish the required number of ties he had to go more than one hundred feet into the woods from the right of way, and on September 6, 1898, the following supplementary contract was made:

"Whereas, the contract heretofore made between Ed. Harrison and J. E. Franklin and the St. L., K. & S. Ry. for cutting of ties to be used in extension from Pascola south, did not stipulate price to be paid said Harrison for hauling ties where it was necessary to haul more than one hundred feet and did not stipulate price that should be paid for seconds to supply said omission, it is agreed that on the lower six and one-half miles the additional charge to be paid said Harrison for distributing ties uniformly fifty ties to the 100 feet along cleared right of way shall be one and one-fourth cents per tie. Ties that shall be graded by the St. L., K. & S. Railway, as seconds shall be paid for at half price heretofore stipulated for standard ties, plus the one and one-fourth cents per tie.

126 App—24

"For the two miles nearest Pascola two cents additional to contract shall be paid for distributing as above.

"J. E. FRANKLIN,

"ST. L., K. & S. RY.

"By J. E. FRANKLIN, Agent.

"R. E. HARRISON."

In the month of October, and before the work of clearing the right of way and the distribution of ties was completed, an injunction was issued against J. E. Franklin, the defendant, by the circuit court of Pemiscot county, interfering with the prosecution of the work, and on notice from defendant of the issuance of the injunction and on his order, Harrison quit work. The suit was to recover a balance alleged to be due for work done under the contract.

Omitting caption, the petition is as follows:

"Respondent's petition alleges that he entered into a contract with appellant to clear out a right of way for a railroad in Pemiscot county, in which it was agreed that respondent should be paid $90 per mile for cutting out the right of way, 13 1-4 cents for each oak tie, and 11 1-4 cents for each cypress tie, made and put on the edge of the right of way ; $1 per 1,000 feet for all saw logs cut from the right of way. The petition further alleges that the plaintiff cut six and one-half miles of the right of way, making $585 due him on that account; that he cut and delivered 5,273 oak ties, 10,101 cypress ties, 150,000 feet of saw logs, making $1,980.87 due him on account of ties and logs, and a total indebtedness of $2,569.97. The petition states that defendant paid on account of said contract and work $1,593, and asks judgment for the balance of $972.97, with interest, from January 1, 1899."

The answer was a general denial.

"And for further answer defendant admitted that on the third day of June, 1898, he entered into a contract with plaintiff, under the terms of which plaintiff

was to cut right of way for a railroad extension from Pascola; that the right of way was to be fifty feet in width, cleared of all timber, and a strip thereof twelve (12) feet wide in the center, and to have all timber cut at the surface of the ground; that all timber was to be taken off the right of way, for which work defendant was to pay $15 per acre; denied that the work was done in the manner and according to the contract, or within the time as in the contract provided.

"Defendant further alleged that under the terms of the contract plaintiff was to manufacture standard ties, and place and distribute the same at the edge of the right of way, fifty ties to the one hundred feet; that for making such standard ties and so distributing them along said right of way, plaintiff was to receive ten cents each for standard cypress ties twelve cents each for standard oak, locust, mulberry and sassafras ties.

"The answer denied that plaintiff placed and distributed any ties along the right of way as agreed in the contract; denied that the clearing of the right of way was done in accordance with the contract.

"Defendant further alleged that the total amount of ties made by plaintiff, counting both standard and second class, at the contract prices, would have amounted only to the sum of $545.72, and that the clearing of the whole right of way, if it had been completed as required by the contract, would have been only the sum of $765, in the aggregate, $1,410.72.

"That plaintiff had paid on account of said work $2,213.61, being $802.89, in excess of the said $1,410.72, and that this sum had been paid in good faith by the defendant in the belief that plaintiff was clearing the right of way and making and distributing standard ties, as he had agreed to in the contract.

"Defendant further answered that he had been compelled to pay $89.35 in order to render the right of way fit

for railroad purposes, and he asked judgment against the plaintiff by way of counterclaim for $892.44." ·

The reply was as follows:

"That plaintiff had performed all of said work up to the time he was stopped by order of the defendant and a proceeding in the circuit court of Pemiscot county enjoining the defendant from further prosecuting said work, and that defendant had accepted the work and paid $1,593 on it, leaving the balance $907.97, sued for, still due."

On the part of plaintiff, the evidence tended to show that he cut out the right of way for eight and one-half miles south of Pascola and had removed all the timber, brush and saw logs and cut the stumps level with the ground on a strip twelve feet wide, in the center of the right of way, with the exception of two miles on the south end of the right of way, and had a force of men at work on the right of way and distributing ties at the time he was notified by defendant, that the circuit court had issued an injunction against the prosecution of the work, and he would have to stop work and the distribution of ties. Thereafter plaintiff ceased work on the right of way and the distribution of ties. Plaintiff's evidence tends to show that at this time Harrison had made 5,273 standard oak ties, 10,101 standard cypress ties and 150,000 feet of cotton wood, ash and hickory saw logs; that he had been paid for clearing the first two miles by the Kennett Railroad Company and had received from defendant, on account of work on the other six and one-half miles, for ties and saw logs, $1,440, and there was a balance due him of $978, the payment of which he demanded from defendant on January 1, 1898, and on divers occasions subsequent to said date. The evidence tends to show that Harrison had a large number of ties hauled to the right of way from the adjoining woods. These ties were not distributed uniformly, fifty ties to the hundred feet, along the right

of way, but were ricked up like cord wood at distances varying from one-half to a mile apart and a great number were piled in Elk Chute. Ties made from timber cut from the right of way and within one hundred feet of the right of way, the evidence indicates, were promiscuously dragged to the edge of the right of way. Defendant testified that after the injunction was issued, he repeatedly, orally and by letter, requested Harrison to distribute the ties as per contract and told him the injunction did not interfere with this part of the work. Harrison denied that defendant ever made any such request, or notified him that he could distribute the ties without violating the injunction.

Plaintiff had the ties inspected by an experienced tie inspector, who made reports of his inspections to plaintiff, and plaintiff's testimony in respect to the number, grade and character of the ties was based largely on the report of his private inspector. The ties were never at any time inspected by the inspector of the Kennett Railroad Company, or by any other person for defendant until in the year 1900, when defendant had them inspected by the cashier of a bank at Hayti. This person was furnished with the dimensions of ties of the first and second grades by defendant and made his inspection accordingly. He reported to have found 817 standard and 63 second grade oak ties, 2716 standard and 2920 second grade, and 2599 cull cypress ties. Prior to this inspection by the bank cashier, defendant let one Friant have nine hundred ties. On the part of plaintiff, the evidence tends to show that in the spring of 1899, Elk Chute was flooded by water let into it from above and some of the ties that had been piled in the Chute was floated off. On the contrary, defendant's evidence tends to show that the water in Elk Chute was not sufficient to have floated off any of the ties. Plaintiff's evidence tends to show that about one-third of the ties he had made were in the woods when he was

ordered to stop work. The saw logs were never taken up or measured. They remained upon the right of way until they rotted. Defendant estimated the saw logs at less than nine thousand feet. According to defendant's evidence and on his calculation, had plaintiff finished clearing the six and one-half miles of right of way, he would have been entitled to $555, and was entitled to $645.72 for ties; that he had paid him $1,952.63 by checks and by taking up due bills plaintiff had given his men for work. Defendant testified the amount of the due bills was something over $500. Harrison swore positively that the amount of the due bills he gave to his employees was either one hundred and fifty or one hundred and sixty dollars, and that he knew they did not exceed $160 in amount. Plaintiff had misplaced his memorandum book in which he kept an account of the due bills, and defendant had turned the due bills taken up by him over to a railroad company in a trade with the company, and they could not be found.

The following instructions were given for plaintiff, to which defendant objected and excepted:

"1.    The court instructs the jury that under the pleadings and the evidence in this cause, it is admitted that the contract of June 3, 1898, fixes the price that defendant promised to pay plaintiff for the work on the right of way and for ties furnished and for the cottonwood, oak and hickory saw logs, cut along said right of way; but you are to determine from the testimony in the cause how much of said work on said right of way was completed by the defendant, and if not fully completed, why it was not so completed, how many oak and cypress ties were furnished defendant, and the quality thereof, and the amount of the cottonwood, oak and hickory saw logs that were cut, and the amount of money that the defendant paid to plaintiff on account of said work, ties and lumber, and if you find from the evidence

that defendant is still owing plaintiff on account of said work, you will so say in your verdict, and you are further instructed that plaintiff is entitled to interest at the rate of six per cent per annum from January 1, 1899, to this date on any sum that you may find that the defendant was owing to plaintiff at that time.

"2. The court instructs you although you may believe from the evidence that Harrison did not complete the work of clearing off the right of way, yet if you believe from the evidence that he was stopped by the orders of Franklin and that he, Harrison, was then ready and willing and able to go on with said work, then and in that event, Franklin cannot ask a credit for causing said work to be finished two years thereafter."

The jury returned a verdict for plaintiff for $742.80. Timely motions for new trial and in arrest were filed which the court overruled, and defendant appealed.

BLAND, P. J. (after stating the facts).—1. Instruction numbered 1, given for plaintiff, is so indefinite and so involved as not to furnish the jury any guide to a correct verdict. It correctly told the jury the price for the work in clearing the right of way was fixed by the contract of June 3. It left to the jury to determine how much of the work on the right of way was completed by *defendant* and if not fully completed, why it was not fully completed. Defendant was doubtless inadvertently named where plaintiff was intended. But as the evidence shows defendant did complete part of the work, and that a part never was completed by any one, it is not probable the jury discovered the error and made the correct application. If the jury had found why the work was not completed by plaintiff, they would have had to go further and find what the legal consequences were, as the instruction did not tell them what they would be, and if they did not find the legal consequences, the fact that the work was not completed could

not have influenced their verdict. A question of law and of fact were thus both submitted to the jury. The jury were also directed to find the number and quality of ties furnished defendant without reference to the supplemental contract, or direction as to when, where or in what condition they were furnished and, in effect, allowed plaintiff the contract price for the ties, irrespective of the evidence showing that the ties had not been delivered or distributed along the right of way, as required by the supplemental contract, which the court, by instruction numbered 2, told the jury was a part and parcel of the contract. They were also instructed that if they found for plaintiff to allow him six per cent interest from January 1, 1899. It is true, plaintiff testified he demanded payment on that date, and his testimony was not contradicted, yet it was for the jury to find from the evidence when the demand, if made, was made. [Mauerman v. Siemerts, 71 Mo. 101.]

2. On the theory that defendant stopped the work, the second instruction is correct; but it seems to us the case was tried on an erroneous theory. The petition alleges the work was done under the contract with defendant and alleges performance. The answer specifically denies performance and pleads a counterclaim for money paid plaintiff and for money paid out for completing the clearing of a part of the right of way. The reply alleges as an excuse for non-performance, the stoppage of the work by defendant. The case was tried on the theory that plaintiff had, as far as he had gone with the work, complied with the contract and was prevented from completing the work by defendant. It seems to us there is but one correct theory upon which the case can be properly tried, and that the pleadings admit of an application of this theory, to-wit, for work and labor done at the instance and request of defendant, the contracts, original and supplemental, furnishing the measure for the valuation of the work done.

In regard to the uncompleted work, according to the terms of the contract, plaintiff should not recover the full contract price but what such work was reasonably worth, having regard to the price fixed by the contract. Upon no other theory do we think a just and fair verdict can be obtained. The petition should be amended to show a waiver of time in which the contract shows the work should have been completed, as time was made the essence of the contract. On a retrial of the cause certain errors that were committed at the trial, in regard to the admission of evidence should be avoided. We have reference to the cross-examination of defendant, by which it seems plaintiff attempted to show that he was overreached by defendant in procuring the contract to be made and also in regard to the contents of the written contract. The terms of the contract are unambiguous and do not require the aid of oral testimony for their interpretation.

For the errors herein noted, the judgment is reversed and the cause remanded. All concur.